Your Honor, if we could reserve two minutes for rebuttal. That's fine. Thank you. May it please the Court, my name is Josh Barton, I'm a student at the University of Arizona College of Law. I'm here with my co-counsel, Bruce Murchison, who's also a law student. We're under the supervision of Dr. Jordan Curtis here tonight, and we're representing Ms. Mitchell, who's in the courtroom today. Your Honor, I will first address the trial court's raising of the burden of proof, and my co-counsel will address the relevance issues of the evidence that was precluded. Ms. Mitchell began her, or had a career for the United States Postal Service for two years, and during that career, she was wronged. She was harassed, and she was discriminated against. She went to the trial court trying to resolve those issues and seek justice, but when she got to the trial court, she was wronged again. Your Honor, the most substantial way that Ms. Mitchell was wronged is that the trial court there raised her burden of proof. Counsel, let's assume for a second, and I think probably you assume it correctly, that what the trial court said in its initial description of the burden of proof was incorrect with respect to the EEOC claim, I take it? Yes. Okay. No objection. Correct? Yes. In final instructions, the judge gives the statutory language, but for. Yes. That's not erroneous. Your argument is, well, because he explained it incorrectly earlier, that's a problem. But again, no objection. So tell us why this is plain error, which is your burden here in the absence of objection. The jury rejected her disability claim. It's a different burden of proof, but don't we have to be convinced that in effect a grave injustice occurred because of the plain error doctrine? Yes, Your Honor, and I think with respect to the disability claim, it's important to note that the disability claim and the CEO complaint had, or the EEOC complaint had different sets of evidence. No, I agree. There are different burdens of proof, but my problem here is that the end instruction was accurate. The instruction finally given was accurate. It was made inaccurate in some respects because of what the judge said in earlier proceedings, although the judge did say at the end of that, I'm going to give you instructions later, you know, so you'll have to follow them, not what I told you now. Given all that, how do we find plain error? Well, Your Honor, I think where the plain error occurs here is that there is only one definition ever given about forecausation, so when the jury correctly defines or correctly says that the standard is about forecausation in those final jury instructions, the jury is still tainted by this definition. They're still thinking that this is the sole cause, and because that jury only has that definition, Ms. Mitchell essentially cannot prove this claim that she has. Counsel, isn't the jury presumed to understand and follow the written jury instructions? Yes, Your Honor, and I think the reason that this becomes plain error is because there is no written definition about forecausation. The only information the jury has to go on— But there is a discussion of motivating factor, is there not? Certainly, there is a discussion of the motivating— Is that not the standard that is supposed to have been applied here? On the EEO complaint, Your Honor? Yes. No, Your Honor, under NASR, the standard is about forecausation. The error that happened in this court was that the court defined but-for causation as the sole and only cause. They said to this jury that if there is any other factor, any other legitimate factor, that you cannot find for the plaintiff, and that's simply not true. There can be multiple but-for causes, there can be multiple causes, the most important of which can be the but-for cause. And under either of those scenarios, the trial court's definition creates a situation where the plaintiff should win and doesn't. Did this—the definition was done during voir dire, correct? The definition came twice. It came once during voir dire and once during the preliminary jury instructions. And during the preliminary jury instructions, it was made spontaneously. It was not written in the jury instructions that were agreed to, and it was made by the court without any request by any of the parties. What do you do with—and I think I asked you this before, but I wanted for you to focus on it. What do you do with the judge's statement at the end of the preliminary instructions that these are—these are just preliminary and I'm going to give you final instructions later and—and you're to follow those, not these? Well, Your Honor— Something like that. It's not—that's not an exact quote. That—that—we think that would be highly relevant if the jury had ever perceived another definition of but-for causation. The problem here is that the jury's only definition came during those preliminary instructions, so the jury doesn't have any reason to believe these instructions have been changed. When they're reading the final jury instructions, they just see that you have to prove both but-for causation. And their only definition of that came during voir dire and preliminary jury instructions via these spontaneous court—statements by the trial court. How does this fit in the reality of this case? You know, I—I look at the argument offered by Plaintiff's counsel and he seems to argue it as an either-or proposition. It's not like he's presenting a case that says, well, yeah, there were these other things out there, but this discrimination was enough of a factor that it ought to qualify, that I've got a cause of action here that—that wins. What other explanation is there? Well, Your Honor, there are—there are—there were multiple different factors that could have factored into the jury, and—and multiple factors that we think were not the but-for cause but were— What's this theory? What were they? The—the theory was that in part it was the absences, in part it was the—the lack of agreement with their managers, and—and the personal dislike that these people had for each other. But that those factors in and of themselves would not have caused any other person to be fired. Is there any evidence to that effect submitted? Your Honor, the—the evidence submitted was the testimony that Ms. Mitchell gave of those experiences and the testimony that Ms. Mitchell gave of the reason for those absences. But was there any evidence with regard to the treatment of other people? So you can support a case that says, well, yes, I've got all these absences, but John wasn't terminated. Your Honor, I don't know that there was a—a John Smith that had the exact number of absences in the exact situation. Is there any evidence remotely like that? Because the question I'm trying to pose is if there's not, then you're just inviting us to speculate, and indeed inviting the jury to speculate there might have been other reasons. Because if the case is being presented by plaintiff's counsel and—and the—the government's brief quotes excerpts from the opening statement and closing argument, the court is here to present this as something of an either-or proposition. Well, if it's presented that way, then does the difference in instructions really make any practical difference? Your Honor, if you—I—I believe you're referring to the plaintiff's opening statement where he—he essentially says that the real reason was this discrimination, right? Your Honor, looking at that, the—the fact that the real reason, the reason that she was terminated was discrimination does not mean that there were not other disagreements, does not mean that there were not technical violations. Let's assume we accept that. But this is plain error review, and I think what Judge Clifton is asking is, looking at this record, shouldn't we be left with—if—if you're going to win, don't we have to be left with some sort of firm impression that looking at this record, she really was discriminated against and, therefore, an injustice occurred? And what we really have in this case, as I read it, is a he said, she said, and the jury, I think, at least on the Osher claim, believes him. So, you know, what we're asking is, what is there in this record that—that should give us, in a plain error context, this notion that such a grave injustice occurred that we ought to step in and—and save counsel from not objecting a trial? Your Honor, I think the—the—the plain error that happens, and the reason that it's so important that—that Ms. Mitchell gets a new opportunity to try this claim, is that Ms. Mitchell was—was given a situation where, literally, she could not win on this claim. And so all the different evidence that she brought in and attempted to—to prove this EEO complaint— But, counsel, with respect, aren't you overlooking what my colleagues have just mentioned to you, though? Even if you got that new trial— Yes. —if the same evidence was presented in the new trial that was presented here, how could you win? There's no evidence of other people being treated differently when—there's just—there's nothing there. And that—I think that's really our concern. This is plain error review. You really have to show there's a manifest unjust—injustice here. And I, for one, am struggling with where that is, even if you get past the jury instruction issue. Where is it? Your Honor, if—first of all, we—we would argue, of course, that under—that because these jury instructions came during Bois d'Ire and those jury instructions, that this Court can review them as a misstatement of the law. Okay, but you're—you're not listening to me. Yes. Let's take that as a given. Let's just say—say you win on that. Say we send it back, but you present exactly the same case in the same way. How do you win if you have no evidence that shows that she was treated differently than anybody else? Well, Your Honor, we think that there is evidence to show that. And—and the key here is that— In the record? In the record, yeah. That's what we're talking about here. I think the—the evidence in the record comes from the discussions that she had for—with Mr. Conway. Okay, but that's—that's my problem, and I want to make—just make the question clear. We have to be convinced that there was a manifest injustice here. And so she does, but she presents a prima facie case. I don't have any doubt about that. But how—is it compelling? Is it such that we have—we—we would conclude looking at this record that she necessarily would have won had the judge given a better instruction? That's your burden. Your Honor, I think the—the key is that—that Ms. Mitchell could have won. And—and what—what happened at the trial court is that any opportunity to win was— Right, right. No, but let me ask the question again. Was this record so compelling that looking at it, we would say she would have won had she been—had she been gotten the correct instruction? I think that's your burden. Your Honor, I think that when you—when you look at the evidence, particularly this evidence combined with the evidence that was precluded about previous complaints in other locations, I think that it is a very compelling case. And I think that there—there's definitely a reason to believe that Ms. Mitchell would have won this case if she had the opportunity to have the right burden of proof. That was also a subtle reminder to us that you do have a colleague. And we—we know we've taken you over your time and don't intend to deprive him. But is there anything else you need to say now or you save it for rebuttal? Your Honor, I'll reserve the rest of what I have for rebuttal. Thank you. So we will hear from your colleague. Thank you, Your Honor. Good morning, Your Honors. My name is Bruce Murchison, also a law student at the University of Arizona. What you would just ask my colleague actually goes into what I'm going to be presenting, and that is the preclusion of evidence. Ms. Mitchell's substantial rights were materially altered by precluding some of the evidence that was going to be presented. And in order to prove discrimination, Ms. Mitchell needed to prove that her complaints were a motivating factor in her termination. Now, this Court has held that other bad acts against similar group members are highly relevant in similar cases, and— But those are bad acts, not simply allegations of bad acts. And isn't the problem here that the evidence that was excluded were questions having to do with have there been complaints, not—not questions saying isn't there this finding or isn't there this evidence of misconduct or discrimination elsewhere? Your Honor, yes. I'm going to explain that in just a moment. In Obrey, which is the main case I wanted to talk about, there were actually three separate instances of relevant evidence that was excluded, and the Court later said, no, that's not right. In fact, the exclusion of that, the error was not harmless. Well, but answer Judge Clifton's question. Were there—did you have here—you had here only complaints. You had no adjudicated instances, whether through an agency or otherwise, of bad conduct by the supervisor, right? Yes, Your Honor. But what some of the evidence would have shown was that the gentleman who was in question here had been moved from place to place each time an allegation was brought, so— There was an allegation in each place. And here's what I'm thinking of having a trial judge. If you get to bring up the allegations, he gets to rebut them. Yes, sir. You get to have a mini-trial on whether or not he did these things in another place, and I look at 404B and I look at 403 and I say, eh, too much confusion. We're going to have a side trial about whether he did stuff in other places. If he'd been found adjudicated to have done something wrong in another place, I'd let it in, but I'm not just going to let the complaints in. Why does the judge abuse his discretion under those circumstances? It's a 403 balancing test. Why doesn't he—or why doesn't the judge get to make that decision? She. I'm sorry. And I probably know the judge. Well, Your Honor, what happened here is— That was sex discrimination. Yes, Your Honor. What happened here was that—the main case I want to talk about, the main evidence in Obergefell made— No, no. I want to talk about this case. I don't want to talk about the other case. I want to talk about your case. Tell me why in your case she, the district judge, abused her discretion by determining that these incidents shouldn't come in. Because, Your Honor, these other evidences would have shown a pattern, or it's called a discriminatory mind. Let's assume that they might have, if believed. But they also would have to be proved. It's not just enough to submit a complaint. You'd have to show that this actually occurred in these other cases. And the defendant would be able to get up and put on his evidence about why it never occurred and these were silly—these were frivolous complaints. And why shouldn't a trial judge be able to conclude under those circumstances, boy, that's a whole other trial. I don't want to have a whole other trial here. These are more likely to confuse than to enlighten. So under 403, I'm going to exclude them. Tell me why that's an abuse of discretion. Well, the reason it's an abuse of discretion, Your Honor, is that without being allowed to present this evidence, then the jury doesn't have a full foundation to weigh these claims on as well. To say that Ms. Mitchell was discriminated because of A, B, and C, whatever, the things she's talking about. Okay, well, is there any evidence that this is—is this a one-time thing? Is she the only one having this or somebody else has had this problem? Is this an ongoing issue? And part of the evidence would have shown, Your Honor, is that this was—first of all, the post office either knew or should have known that this type of thing was happening. Well, this kind of thing is complaints. It's nothing about determination or adjudication. Nothing about the substance of the complaints. He was never asked for—he was always asked—the questions that were objected to were, were there complaints? The questions that were not posed were, did you discriminate against Ms. X in this context? The latter question presumably would have been allowed. The judge could have decided it was irrelevant but seems probably pretty relevant. But we don't know because the lawyer never asked that question and the lawyer never made an offer of proof to suggest he had anything other than bare allegations made by other people. Bare allegations made by other people don't amount to evidence. So what, what was kept out that should have been let in? Well, Your Honor, that's the thing. We don't know because this evidence was not allowed. No, but doesn't, doesn't, doesn't counsel have the obligation to make a record so that we know what was kept out? In other words, doesn't, doesn't counsel—and I know it wasn't you because you would have—but did trial counsel make an offer of proof and say, I have the following four complaints and they're documented in this way and I have copies of them and, and, and, and that's why I'm asking the question, Your Honor. Your Honor, in the excerpt of the record, tab 14 is on pages 305, 53 and 531, I believe. It talks about that, you know, Ms. Mitchell's counsel had brought this question to Mr. Conway and asked him about the EO complaints in his other areas. Counsel objected, irrelevance, and he asked the exact same question based on complaints here in Portland. Again, objection. And then the judge asked Mr. Con, or Mr., Ms. Mitchell's counsel, was there an offer of proof? And he said, well, yeah, because it shows a history of hostility. No, I, that's a legal offer of proof. I'm telling you why this is relevant, but I want to know if there was a factual offer of proof. Here's what, if you had allowed him to answer these questions or allowed me to present evidence, here's what we would have shown. We would have shown that in Portland, he fired a woman for this reason. And in, and in Seattle, he harassed a woman for this reason, et cetera, et cetera. Certainly, Your Honor. And the, I, the main thing here is that had this evidence allowed. To answer that question, yes or no, was there a factual offer of proof? The factual offer of proof was not there, Your Honor. And what we're trying to say is that the facts may have come out had this evidence been allowed. And looking at these other cases, such as in Obrey, where the courts found that a discriminatory state of mind can be shown. Well, but doesn't, doesn't the rule, I bet you I remember the rule number wrong, but I think it's 105 or 106 of the rules of evidence say that if you're going to complain about the exclusion of evidence at trial, you must make an offer of proof about what the evidence would have been. Because we're an appellate court and we're trying to figure out whether this would have made a difference. And we don't have a clue about what the evidence would have been. And I can appreciate that, Your Honor. And when I look at, when I point to the offer of proof in the record that I stated in tab 14, that was basically the same line of questioning that was being asked, not only about Portland complaints, but also the ones prior to that in other jurisdictions. And what we're contending, Your Honor, is that had this not been excluded, then the jury would have had more evidence to weigh these facts on. It could have come with a different conclusion. But you're dealing in generalities. What my colleagues have asked for is specifically what was offered. And you conceded there was no factual offer of proof. So we're left to speculate what it might have been. It's rule 103A2. If the ruling excludes evidence, a party informs the court of its substance by an offer of proof unless the substance was apparent from the context. And what that rule tells us is in order to preserve an evidentiary claim for appeal, you've got to tell the trial judge what evidence you would have put in had you been allowed to. And that's what I don't see in this record. Yeah. The offer of proof that I pointed to was basically on the complaints that were here in Portland. And we were looking that that would also apply to the previous question on the allegations of other jurisdictions. So, again, had that been allowed, perhaps that would have been there. We'll still give you and your colleague each a minute for rebuttal. Thank you, Your Honor. Thank you. And we'll hear from the government. May it please the Court. James Cox appearing on behalf of Defendant the Postmaster General. The trial court's jury instructions in this case were accurate and fair. But beyond that, there is substantial evidence in this record that the purported error in the jury instructions claimed by the plaintiff was harmless and was not prejudicial. Let's start at the beginning. You do agree that the statements made by the judge, I think it twice before the jury started to hear evidence about the burden, was incorrect. Her statement that but for meant sole cause was incorrect, that they are not synonymous terms. The judge, the judge defined but for as sole cause. Correct. Twice. Twice. And she, she, her indication was that but for meant sole cause. And, and that is inaccurate. So why? So when you say the jury instruction was accurate, I understand that the jury was properly instructed that the burden of proof was but for. But why shouldn't we conclude that the jury must have understood that as meaning sole cause, given the judge had defined that term twice for them already? Well, I think there's several layers to that, Judge Hurwitz. One layer, I would say, is because of the plaintiff's theory in this case was that either or theory. Sole cause is not a standard of causation, such as motivating factor or but for. It's, it's identifying how many causes. You're making a separate argument, and I understand that argument. I want you to get to it, which is that it probably didn't make any difference in this case. My question is a different one. Why shouldn't we conclude that the jury instruction was infected by the judge's earlier two statements? I think because of the, uh, the lack of proximity to the final jury instructions, we're talking about three days earlier, the fact that the trial court told the jury, these are preliminary, they're subject to change. What I tell you at the end of evidence during final instructions in which you take back to the jury room, the written instructions, those are the instructions that you must follow. Is, is but for a term that you think most lay people understand? I, I, I've taught torts and I don't understand it, so I'm trying. I think in the context of the jury instruction that was given, uh, that the lay person does understand it. I agree if the, if you just use the term, but for, it might be difficult for a lay person. What about that? Tell me what in the context made this more explicable to the jury in the actual jury instruction. The, the question is, has the plaintiff met her burden of proof to show that the adverse employment action, her termination, uh, would not have occurred, but for her protected activity. So it, it indicates that because of standard, the, the, um, that it's a determinative factor and, and I think the trial court actually in the middle of trial actually did explain what, but for men. And that's in supplemental excerpt to record page 45, uh, the, the judge was giving a limiting instruction about the, the, the evidence of harassment from plaintiff's prior complaints. And, and the judge made the statement with respect to, but for cause quote, so the issue is really what was the basis for the removal end quote. So, uh, after the, uh, the sole cause we're talking about the day after that statement was made, the judge is really putting in, in quite simple terms saying, why was she removed? What was the basis for the removal? And in the final instructions, it's, there's no reference to other causes. The question, the jury instruction focuses on the issue was the protected activity. The, the reason that this, uh, adverse action occurred. Let me take you to hypothetical land for a second. What if plaintiff's counsel during, after final instructions or before them had said, Your Honor, I object, um, because you defined but for initially as, as being the sole cause. I think that just telling the jury but for in the final instructions is incorrect. You need to explain to them that what but for really means is something other than sole cause. Would that objection have been correct? I think not in this situation, Your Honor, because the plaintiff was not pursuing a mixed motive theory. The plaintiff was pursuing, pursuing a single motive theory. This case is interesting because the jury was able to assess the plaintiff's claims under both a mixed motive theory under the rehab act retaliation claim and under the but for standard, which So your, your, your response is that even though the judge told, gave them the wrong pre-trial, if somebody had asked her to correct it, she wouldn't have been required to. I think the judge, Your Honor, I think the judge should have clarified that, that but for does not mean, um, uh, sole cause. I, I, I agree with that, Your Honor, that the judges, uh, defining the terms as being synonymous should have been. So assume with me that the jury understood it to mean sole cause, um, in the, in the Would it have made a difference in the outcome of this case? It would not judge Hurwitz. And, and this case is, it's not just based on, uh, the evidence. It's also based on the presence of the rehab act retaliation claim. That claim was based on virtually the identical facts as the title seven retaliation claim. It involved the same adverse action, the termination and the protected activity that the basis of the claim was virtually identical and treated by the parties as being absolutely identical. There were three complaints made by the plaintiff in the year before her termination, two EEO complaints and an OSHA complaint. The EEO complaints both included claims of disability and sex discrimination. So both of those complaints are the protected activity that formed the basis of both retaliation claims at trial. Now, the OSHA complaint was actually a sexual harassment claim, uh, and only forms a basis for a title seven retaliation claim. But the record shows that the parties and the court treated the protected activity for both claims as the same. And that's shown in the pretrial order where the plaintiff actually merged the two retaliation claims in the pretrial order. That's at ER page 38. And the court's summary of the claims in the jury instructions uses the same set of facts for both retaliation claims. That's at page ER 47. And so, uh, we have a factual pattern in which the plaintiff only needed to show that her protected activity was a motive, was a motivating factor. And the jury found that she had not met that standard. With respect to the OSHA claim, her burden was? The, that was one element of the, of the protected activity for the, there was no dispute that the plaintiff engaged in protected. I know my, my question is what was her burden of proof with respect to the OSHA retaliation claim? That was one of that OSHA, uh, uh, uh, uh, protected activity only supported the title seven claim. And her standard there was the, but for, uh, a standard. And it's important to note that the government in this case never argued a sole cause to the jury during closing arguments, never said, well, her protected activity may have been, uh, a cause, but guess what? Her, her attendance problems were also a cause. So you can't find for her. It would make no sense for the, uh, the, the employer to do that in this situation because the lower causation standard controls the claims. And so the issue in closing arguments was motivating factor. That is the lowest burden of proof. And that is the one that the jury found that the plaintiff had failed to meet. And so that intrinsic evidence shows that the purported error, uh, was not, uh, uh, was not prejudicial. And I, I, with respect to the issue of the standard of review, uh, on that, uh, it is a, uh, uh, a clear error or a plain error standard of review. The Ruiz case involves a very similar factual pattern. The trial court, uh, did not violate rule 51 as the, the plaintiff, uh, argued in the reply brief. Rule 51 deals with the final, uh, jury instructions that are given after the evidence by the plain language of rule 51, the, uh, the rule deals with the final jury instructions. And, uh, the, the plaintiff had an opportunity throughout the trial to lodge any objection, uh, to the explanation of the, uh, the term that was used during preliminary instructions and, and did not do so. Uh, turning to the, uh, evidentiary issue that the, the second issue identified by the plaintiff regarding the exclusion of, of evidence of the existence of other complaints, there's two points I wanted to raise to the court on that issue. One is the, uh, the failure of the, of the plaintiff to, to make an adequate offer of proof to allow the district court to know the substance of the, the evidence, uh, that the plaintiff was seeking to enter into evidence as well as the purpose of that evidence. Do you agree with your colleague that there is nothing in the record from which we could determine, had the judge allowed the answer to the questions, what they would have been? There is nothing in the record, Your Honor, that would, that would establish, uh, what the, what was the substance of those complaints. Or even, even whether, is there anything in the record that would indicate that the answer to the question would be yes or no, and what, and that there were complaints? Did, did, did counsel ever say, well, there was a complaint in Portland and there was a complaint in Seattle and et cetera? There's nothing in the, in the record that would say what the answer to that would be. And I would say from that rule of evidence 103, uh, at most the court, the, at most the court could infer from the question is that, uh, perhaps other, uh, EEO complaints existed. And that gets to the second issue, uh, on this argument, which is the substance of the evidence that the plaintiff, uh, uh, was seeking to, uh, admit. This is not 404B evidence regarding, uh, other acts of discrimination to show intent. Uh, the case decided by the plaintiff, the Caruso case, uh, and the Obrey case involves evidence that would, uh, could be admissible under 404B and 403 to show, uh, intent of other acts here. The, uh, at most the evidence would have been the existence of allegations regarding, uh, other complaints. And so it is, so, so your, your position is if they were coming in with a witness to say he did these things, then you would fit within the 404B. It could, Your Honor. It would depend. But not simply, not simply a complaint that he'd done it. Not simply a complaint unless, unless the plaintiff felt that somehow the government's witness here, and this is, this is an unusual situation because it's on cross-examination of one of defendant's witnesses. But unless the plaintiff felt that the, the defendant's witness was going to admit to acts of discrimination or retaliation that could be admissible under 404B, that's the only plausible way. And I think as Judge Clifton mentioned earlier, there was no way for the district court to, to assess that that was, uh, that that was the substance of evidence that was coming in. The plaintiff never followed up with an offer of proof, not just by explanation to the judge, but by asking, but by a follow-up question, uh, regarding, uh, have you admitted to acts of retaliation in the past? Or isn't it true that, um, you've been found to have retaliated in the past? So, uh, under the 404B standard, the plaintiff has failed to offer sufficient proof that defendant committed the other acts or that the, the, the witness committed the other acts that would, uh, possibly be admissible under 404B. And that still leaves the, the 403 standard, uh, which would, would still remain. I, I wanted to distinguish the Opry case cited by, uh, plaintiff's counsel as well. The claim that existed in that case was a pattern or practice claim. The plaintiff was required to show as part of, uh, his burden of proof that the Navy had engaged in a standard operating procedure of racial discrimination. And so for that reason, the district, or I'm sorry, this court allowed the statistical evidence of discrimination to come in. But the court, uh, actually pointed out that in, in the case of, uh, of individual discrimination, that that evidence, uh, might not be admissible. And I would also point out with respect to the, uh, uh, the standard for plain error review, uh, this, uh, this evidence, um, plaintiff has failed to show that the trial court's ruling was plainly erroneous and cannot make that showing, uh, because, uh … Or if they did object, did they have to show plain error with respect to the, with If we thought the, if we thought the issue was in front of us, they'd simply have to show prejudice, not plain error, right? They, they tried, they, they tried to present evidence and the judge said no. I think they preserved that issue for, they may have preserved that if, assuming an offer of proof had been made, we wouldn't have to worry about plain error, would we? Well, I think, Your Honor, that would only go so far as what the, the question, how the question might be interpreted as an offer of proof. I think at best, you could say that that, uh, question was an offer.
judges: Clifton, Smith, Hurwitz